United States District Court
Southern District of Texas
**ENTERED**
January 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Joye D'Costa, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | Case No. 4:21-cv-04031 |
| Abacus FoodMart Inc.; Abacus FoodMart 1, Inc., and Lukos Abraham, | § § § § § | |
| *Defendants.* | § § | |

## <u>AMENDED MEMORANDUM AND RECOMMENDATION</u>

In this suit for unpaid wages and overtime, two pending motions were referred to the undersigned judge.  Dkt. 14.  Plaintiff Joye D'Costa filed a motion for default judgment against two entities, Defendants Abacus FoodMart Inc. and Abacus FoodMart 1, Inc. (collectively, "the Abacus Entities"), and an individual, Defendant Lukos Abraham.  Dkt. 11.  D'Costa sought leave to supplement his motion.  Dkt. 13.

The Court grants D'Costa's request for leave to supplement his motion for default.  And as explained below, the failure of the Abacus Entities to appear or defend in this case warrants entry of default judgment against them, although D'Costa cannot recover all the relief sought in his motion.  Default judgment, however, is inappropriate against Abraham, a *pro se* individual who

appeared and filed a responsive pleading in this case. D'Costa's motion for default therefore should be granted in part and denied in part.

## Procedural History

This suit asserts that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, by failing to pay D'Costa overtime wages despite his working more than 40 hours per week as a convenience store clerk at Mesa Food Mart. Dkt. 1 ¶¶ 1-5, 24-25. Defendants were served but did not file an answer, which prompted the Court to enter a notice of default. Dkt. 10. D'Costa followed that by filing a motion for default judgment. Dkt. 11.

But Abraham then appeared at the scheduling conference on March 11, 2022. At that time, the Court instructed Abraham that he had fourteen days to file a response and retain counsel for the Abacus Entities.

On March 24, 2022, Abraham filed a letter stating that he could not afford to retain an attorney for the Abacus Entities. The letter continues with responses to key factual allegations in the complaint.

The letter admits that D'Costa was not paid overtime, despite continuing to work 12 hours each day after Defendants purchased the store. *See* Dkt. 12. But the letter also purports to justify the failure to pay overtime. It claims that the prior owner of the store told them D'Costa had asked to work 12-hour shifts each day, at an hourly rate of $12.00 with "no need to pay additional overtime …." *Id.* at 1. After buying the store, Defendants allegedly continued

2

D'Costa's "same salary as well as same hours." *Id.* At first, Defendants paid D'Costa in cash at the end of the month, per his request. *Id.* at 1-2. But Defendants then told D'Costa that they needed to properly document the business's expenses by issuing him a paycheck every 15 days. *Id.* at 2. So Defendants told D'Costa that they needed his social security card and driving license to pay his salary. *Id.* D'Costa stalled. *Id.* According to the letter, Defendants told D'Costa on April 1, 2021 that they could not pay D'Costa his salary or any overtime unless he provided the requested information by the next pay period. *Id.* D'Costa then quit. *Id.* After D'Costa complained to "work force," a "workforce officer" allegedly contacted Defendants. *Id.* The officer allegedly "agreed and accepted" Defendants' position that they were willing to pay the overtime but could not do so without D'Costa's social security and legal identification. *Id.*

Defendants have not appeared at hearings since Abraham's letter was filed. This includes a status conference on December 7, 2022, and a hearing on D'Costa's motion for default judgment on January 7, 2023. *See* Dkts. 15, 18.

## Legal Standard

A default judgment is available against a defendant who has "failed to plead or otherwise defend ...." Fed. R. Civ. P. 55(a). But even when a defendant has technically defaulted, a plaintiff is not entitled to a default judgment as a matter of right. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per

curiam).  Rather, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). The decision whether to grant a default judgment is discretionary. *Lewis*, 236 F.3d at 767 (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

## Analysis

The appropriateness of default judgment depends on "(1) whether the entry of default judgment is procedurally warranted; (2) whether the substantive merits of the plaintiff's claim as stated in the complaint provide a sufficient basis for default judgment; and (3) whether and what relief the plaintiff should receive." *Allen & Overy v. Zaziski*, 2022 WL 19506, at *1 (S.D. Tex. Jan. 3, 2022) (citing *Neutral Gray Music v. Tri-City Funding & Mgmt. LLC*, 2021 WL 1521592, at *2-3 (S.D. Tex. Mar. 30, 2021)).  As explained below, this inquiry results in different conclusions with respect to the Abacus Entities and Abraham.

## I.    Default judgment is appropriate against the Abacus Entities.

### A.    For the Abacus Entities, default is procedurally warranted.

The Court addresses the Abacus Entities first.  Six factors inform whether default judgment is procedurally warranted: "[(1)] whether material issues of fact are at issue, [(2)] whether there has been substantial prejudice, [(3)] whether the grounds for default are clearly established, [(4)] whether the

default was caused by a good-faith mistake or excusable neglect, [(5)] the harshness of a default judgment, and [(6)] whether the court would think itself obliged to set aside the default upon the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (numeration added).

These factors indicate that a default judgment against the Abacus Entities is procedurally proper. "The law is clear that a corporation as a fictional legal person can only be represented by licensed counsel." *K.M.A., Inc. v. Gen. Motors Acceptance Corp.*, 652 F.2d 398, 399 (5th Cir. 1981). This principle forecloses classifying Abraham's appearance at the initial conference as an appearance by the Abacus Entities. It also means that Abraham's letter cannot be treated as an appearance or responsive pleading on behalf of the Abacus Entities that purports to raise material issues of fact under the first *Lindsay* factor. Rather, the factual allegations against the Abacus Entities are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation ... is admitted if a responsive pleading is required and the allegation is not denied.").

For the second factor, the Abacus Entities cannot claim that default judgment would substantially prejudice them. The Court warned the Abacus Entities of their need to retain counsel, and their subsequent inaction "has ground the adversary process to a halt." *Joe Hand Promotions, Inc v. Fusion Hookah, LLC.*, 2020 WL 6876208, at *2 (W.D. Tex. Nov. 23, 2020).

5

Likewise, the Abacus Entities' failure to follow through by making an appearance, coupled with the Court's notice of default judgment, clearly establish grounds for default under the third factor.  These circumstances foreclose any basis for claiming that the Abacus Entities' default resulted from a good faith mistake or excusable neglect or that entry of default judgment would be unduly harsh, the fourth and fifth factors.  As for the last factor, the Court finds no reason why it would be required to set aside a default judgment, if later requested by the Abacus Entities.

## B.   The complaint provides a sufficient basis for default judgment against the Abacus Entities.

The second inquiry examines the substantive merits of D'Costa's claims against the Abacus Entities.  *See Allen & Overy*, 2022 WL 19506, at *1.  This step asks whether there is "a sufficient basis in the pleadings for the judgment [to be] entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  The Court determines whether the factual allegations in the complaint—apart from those about damages—if taken as true, would state a claim upon which relief can be granted. *See United Cmty. Bank, Inc. v. Loven Bf, Inc.*, 2020 WL 5045310, at *2 (S.D. Tex. July 22, 2020) (quoting *Shaw v. Galo Equip. & Constr., LLC*, 2020 WL 3118928, at *2 (W.D. Tex. June 12, 2020)).  This threshold is lower than the standard for surviving a motion to dismiss under Rule 12(b)(6). *See Wooten v. McDonald Transit Assocs., Inc.*, 788

F.3d 490, 499-500 (5th Cir. 2015) (holding that the allegations need only provide fair notice of the claim under Rule 8, particularly when the defaulting defendant chose to forgo moving for dismissal or for a more definite statement under Rule 12(b)(6) or 12(e)).

D'Costa's complaint alleges that the Abacus Defendants failed to pay required overtime wages in violation of the FLSA, 29 U.S.C. § 207(a)(1).  Dkt. 1 ¶¶ 31-38.  To prevail, D'Costa must allege enough facts to show "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).   Taking the allegations as true, the complaint satisfies these requirements.

Combining the first and second requirements, D'Costa provided enough allegations to support an employer-employee relationship under the FLSA, and to show that D'Costa's activities trigger FLSA coverage.  The FLSA defines an "employer" broadly to reach "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see also McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (emphasizing that the FLSA's definition is broader than the common-law definition of employer).  In addition, to be covered by the FLSA, the employee must have

7

either "engaged in commerce" or be employed as part of an "enterprise engaged in commerce." 29 U.S.C. ¶ 207(a)(1). "*Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). For individual coverage, courts examine "whether [an employee's] work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam). Alternatively, enterprise coverage extends to a business with "employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and ... whose annual gross volume of sales made or business done is not less than $500,000." *Montoya Garcia v. Overnight Cleanse, LLC*, 2021 WL 902494, at *5 (N.D. Tex. Jan. 22, 2021) (quoting *Melendez v. DJJRN, Inc.*, 2020 WL 7774940, at *3 (N.D. Tex. Nov. 16, 2020), *adopted by* 2020 WL 7771203 (N.D. Tex. Dec. 30, 2020)).

According to the complaint, the Abacus Entities operated gas stations and convenience stores, including the Mesa Food Mart where D'Costa worked and was paid on an hourly basis, and their gross business volume exceeded $500,000. Dkt. 1 ¶¶ 2, 9-10, 18-19. The complaint alleges that employees of the Abacus Entities, including D'Costa, handled and sold goods that had

8

traveled into Texas from other states—like food items, cigarettes, alcohol, merchandise, and cleaning supplies.  *Id.* ¶ 21.  The complaint also asserts that employees used equipment produced outside of Texas and used instrumentalities of interstate commerce by processing credit-card payments and selling lottery tickets for nationwide lotteries.  *Id.* ¶ 22.

Taking these allegations as true, the Abacus Entities qualified as D'Costa's "employer" under the FLSA, by operating the business for which D'Costa worked.  As for other requirements for FLSA coverage, D'Costa's allegations regarding his sale of goods through interstate commerce and use of instrumentalities of interstate commerce while working for the Abacus Entities demonstrate a sufficient nexus with interstate commerce to trigger individual FLSA coverage.  The complaint also adequately alleges that the Abacus Entities operated an enterprise with a gross business volume exceeds the statutory threshold ($500,000) and employees selling goods that had traveled in interstate commerce and using instrumentalities of such commerce.

Moreover, D'Costa's allegations reflect that the Abacus Entities violated the FLSA's overtime requirements and did so willfully.  The FLSA forbids employing an employee "for a workweek longer than forty hours unless such employee receives compensation ... in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 441 (5th Cir.

2005) (quoting 29 U.S.C. § 207(a)(1)).  A violation is willful if the employer "knew or showed reckless disregard for ... whether its conduct was prohibited by the statute." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003).

According to the complaint, D'Costa worked more than 40 hours each week from February 13, 2021, to April 18, 2021.  Yet for all those weeks, he was not paid at the required time-and-a-half rate of $18 an hour for the hours he worked beyond a forty-hour workweek.  *See* Dkt. 1 ¶¶ 23-27, 32-33.  And the complaint alleges the Abacus Entities had knowing, willful, and reckless illegal and "wide-spread practice" of failing to pay the mandated overtime compensation to D'Costa and other employees.  *Id.* ¶ 34.

These well-pleaded allegations support D'Costa's FLSA claim.  D'Costa is entitled to default judgment against the Abacus Entities.  *See, e.g.*, *Chappie v. Energi Pros LLC*, 2020 WL 3978398, at *1-2 (S.D. Tex. June 10, 2020) (crediting similar allegations as basis for default judgment), *report and recommendation adopted*, 2020 WL 3972533 (S.D. Tex. July 14, 2020).

## C.  D'Costa is entitled to recover against the Abacus Entities most, but not all, of the damages he seeks.

The next question regarding the Abacus Entities concerns D'Costa's damages.  Under Rule 55(b), the court has discretion to convene an evidentiary hearing on the issue of damages.  Fed. R. Civ. P. 55(b)(2).  But an evidentiary hearing is unnecessary if those damages can be "determined with certainty by

reference to the pleadings and supporting documents ...." *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) ("[W]here the evidence before the court allows it to make findings based on [submitted] evidence, the court need not jump through the hoop of an evidentiary hearing."). That is the case here because D'Costa has provided the requisite information to calculate his damages.

### 1. Overtime and non-overtime wages

The first component of D'Costa's damages consists of unpaid overtime wages. His declaration and accompanying chart reflect that D'Costa worked four overtime hours each day from February 15, 2021 through April 18, 2021— 44 hours each week, or 396 hours total—for which he is owed $2,376.00 in damages. Dkt. 11-1, Ex. A ¶ 2 & attached chart (column 4, "Overtime Wages Earned"). That sum is based on the difference between his standard hourly rate of $12 per hour and the rate of $18 per hour required under the FLSA.

Problematically, however, D'Costa's motion for entry of default also seeks damages consisting of unpaid *non-overtime* wages (what he calls "straight-time wages") at his standard $12/hour rate from April 1 through April 18, 2021. *See* Dkt. 11 at 2 (asserting that Defendants failed to pay certain "straight-time wages" required by 29 U.S.C. § 206(a)(1)); Dkt. 11-1, Ex. A ¶ 2 (claiming D'Costa was not paid at all for the last eight days of his employment), *id.*, chart (column 9, alleging $1.152.00 in "Straight-time Wages Owed"). Nowhere does his complaint allege that the Abacus Entities entirely failed to

pay D'Costa at his standard hourly rate.  To the contrary, the allegations are limited to non-payment of *overtime* wages.  *See* Dkt. 1 ¶¶ 5, 26, 29-30, 35, 38; *see also id.* at 7 (prayer).  Likewise, the only statutory basis for recovery invoked in the complaint is 29 U.S.C. § 207(a)(1), which governs overtime wages.  *Id.* at 5, 7; *id.* ¶¶ 5, 34.  There is no reference to 29 U.S.C. § 206(a)(1), which requires employers to pay at least minimum wage for hours worked.

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  This rule explicitly limits the available relief to what D'Costa sought in his complaint.  *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986,* 548 F. Supp. 2d 381, 386 (W.D. Tex. 2008) ("[T]he relief prayed for in a complaint defines the scope of relief available on default judgment.").  Having pleaded only an entitlement to unpaid overtime wages, D'Costa cannot obtain a default judgment awarding an additional $1,152.00 for unpaid straight-time wages.  *See, e.g.*, *Gauna v. Tex. AAA Vacuum Truck & Outhouse Serv. LLC*, 2016 WL 8856915, at *3 (W.D. Tex. Nov. 3, 2016) (rejecting request for default judgment awarding expenses that were not sought in an FLSA complaint).

## 2.   Liquidated damages

"Under the FLSA, an employer who violates the overtime provisions is liable not only for the unpaid overtime compensation, but also for an additional equal amount as liquidated damages."  *Singer*, 324 F.3d at 822 (internal

quotation marks omitted); 29 U.S.C. § 216(b).   Although this award is discretionary, the Abacus Entities' failure to appear necessarily means they failed to meet their burden of showing that liquidated damages are unwarranted.  *See Picasso v. Halal Beasley Ranch, LLC*, 2019 WL 4054036, at *1 (S.D. Tex. Aug. 28, 2019) (noting that employer "must carry a 'substantial burden' to demonstrate good faith and a reasonable belief that its actions did not violate the FLSA," a burden that "is necessarily unmet" due to defendants' default) (citing *Singer*, 324 F.3d at 822-23).

Here, D'Costa's claimed overtime wages equal $2,376.00.  The Court concludes he should recover an equal sum of $2,376.00 as liquidated damages.

D'Costa cannot recover the larger sum of liquidated damages that goes beyond the scope of his complaint.  Dkt. 11 at 3 (requesting $3,528 in liquidated damages, which includes $,1,152.00 in unpaid "straight-time" wages).  His complaint requests "liquidated damages in an amount equal to his *overtime* wages" only.  Dkt. 1 ¶ 38 (emphasis added); *see also id.* at 7(d) (prayer).  It does not allege that D'Costa is owed liquidated damages based on any non-overtime wages.  *See* Dkt. 1.  His liquidated damages therefore cannot include those non-overtime wages.  *See* Fed. R. Civ. P. 54(c); *Gauna*, 2016 WL 8856915, at *3.

**D.    The Court defers ruling on D'Costa's application for attorneys' fees.**

D'Costa also seeks attorney's fees under 29 U.S.C. § 216(b). Such an award is mandatory if the employee establishes a violation of the FLSA. *Id.* But the amount of reasonable fees requires application of the lodestar method, which ascertains counsel's reasonable hour rate, multiplies that rate by the number of attorney hours reasonably expended, and adjusts that figure based on the factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718-19 (5th Cir. 1974)). *See Singer*, 324 F.3d at 829-30 (affirming application of lodestar method for calculating attorney's fees in FLSA case).

D'Costa seeks $19,250.00 in attorneys' fees. Dkt. 11 at 6; *id.* at 11-2 (declaration). Although it is not unusual for fee awards to exceed the amount of damages in an FLSA case, *Howe v. Hoffman-Curtis Partners Ltd.*, 215 F. App'x 341, 342 (5th Cir. 2007) (per curiam), D'Costa's failure to address key aspects of the lodestar calculus gives cause for concern.

Most notably, D'Costa application and supplemental filing focus heavily on justifying the reasonableness of counsel's hourly rate ($500).[1] Dkt. 11-2 (declaration); Dkt. 20 (supplement). But the reasonable rate is only one part

---

[1] This Court recently concluded that the same counsel's hourly rate—in an FLSA case—should be reduced to $400, including based on recent Texas State Bar data. *See Fernandes v. Northline Enters., Inc.*, 2022 WL 3229510, at *3 (S.D. Tex. July 25, 2022), *report and recommendation adopted*, 2022 WL 3227872 (S.D. Tex. Aug. 9, 2022).

of the equation. The second step of the lodestar analysis is "to determine the number of hours reasonably expended on the litigation." *Ramirez v. Lewis Energy Grp., L.P.*, 197 F. Supp. 3d 952, 958 (S.D. Tex. 2016) (citing *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)); *see also Hilton v. Exec. Self Storage Assocs., Inc.*, 2009 WL 1750121, at *10 (S.D. Tex. June 18, 2009). "[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment." *Saizan*, 448 F.3d at 799. "Billing judgment refers to the exclusion of hours that are excessive, redundant, or unproductive." *Ramirez*, 197 F. Supp. 3d at 958 (citing *Saizan*, 448 F.3d at 799). Absent evidence of billing judgment, a court has discretion to reduce the award by a reasonable percentage of hours, as a substitute for exercise of billing judgment. *Id.* at 959 (reducing recoverable hours by 20% "to arrive at the number of hours reasonably spent on this case").

Many of the billing entries in D'Costa's fee application do not reflect an exercise of billing judgment. As just one example, the total time (7.5 hours) spent drafting the pro-forma complaint is excessive, Dkt. 11-2 at 6 (entries on Dec. 9 and Dec. 10, 2021), particularly given counsel's professed 20-year experience with FLSA cases, *id.*, Ahmed Decl. ¶¶ 6, 12, and the lack of any novel issues presented. The hours spent preparing and filing routine and straightforward documents like the certificate of interested parties (1.25

15

hours) and preparing and coordinating service of summons (5.5 hours total)—among others—are equally excessive. Dkt. 11-2 at 6 (entries for Dec. 30, 2021); *see, e.g.*, *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 389 (S.D. Tex. Jan. 26, 2016) (concluding that .75 hours for a certificate of interested parties that "listed only the parties to the action" was excessive).

Moreover, D'Costa has not obtained all the relief he sought—not against the Abacus Entities, as discussed above, *see supra* Part I.C, nor against Abraham, *see infra* Part II. "When a plaintiff achieves only partial success, attorneys' fees should not be awarded for hours not 'expended in pursuit of the ultimate result achieved.'" *Hilton*, 2009 WL 1750121, at *12 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

Importantly, degree of success affects the lodestar calculation and is one of the *Johnson* factors. *See id.* at *13. Indeed, "[t]he most critical single factor in determining the reasonableness of a fee award is the degree of success obtained." *Id.* (citing *Saizan*, 448 F.3d at 800). "Where a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at *13 (quoting *Saizan*, 448 F.3d at 800, and collecting cases where courts reduced the lodestar to reflect the difference between the amount sought and the results obtained).

16

Another relevant consideration is the amount of attorney's fees awarded in similar cases. *See Johnson*, 488 F.2d at 719 (twelfth factor). Many similar FLSA cases at the default-judgment stage resulted in far lower fee awards than the $19,250.00 sought here. *See, e.g.*, *Ruiz v. DNC Constr.*, 2023 WL 159772, at *4 (S.D. Tex. Jan. 11, 2023) ($6,900); *Chappie*, 2020 WL 3978398, at *3 ($11,485); *Platter v. G. Force Cement Works, L.L.C.*, 2020 WL 1308171 (S.D. Tex. Mar. 16, 2020) ($2,432); *Picasso*, 2019 WL 4054036, at *2 ($2,037.50); *Constant v. A Place for Children, Inc.*, 2017 WL 713848, at *3 (S.D. Tex. Feb. 23, 2017) ($5,650).

D'Costa's motion does not address these constraints. Yet his supplemental brief asks for leave to seek *additional* attorneys' fees incurred for attending subsequent conferences and hearings (and preparing the supplement). Dkt. 20 at 2. At a recent hearing, D'Costa's counsel also requested an opportunity to address the Court's concerns about the apparent excessiveness of the fees sought.

Thus, to avoid addressing these issues piecemeal, the Court should defer its ruling on the amount of attorneys' fees to award until a final judgment is entered that disposes of all claims against all parties (including Abraham, *see infra* Part II). *See* Fed. R. Civ. P. 54(d)(2)(B) (providing that motion for attorneys' fees "must ... be filed no later than 14 days after the entry of

judgment").   D'Costa's revised fee application must fully address the considerations detailed above.

### E.   D'Costa can recover some of the costs he seeks.

D'Costa seeks reimbursement of $602 in litigation costs.  "In FLSA cases, the only costs that can be awarded are those listed in 28 U.S.C. § 1920 unless 'explicit statutory or contractual authorization' provides for recovery of others." *Fernandes v. Northline Enters., Inc.*, 2022 WL 3229510, at *4 (S.D. Tex. July 25, 2022) (quoting *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010)), *report and recommendation adopted*, 2022 WL 3227872 (S.D. Tex. Aug. 9, 2022).

Of the costs sought, $402.00 consists of the initial filing fee.  Because the statute authorizes recovery of that fee, it is properly awarded here.  28 U.S.C. § 1920(5); *Alejandro v. Prop. Care Sols. LLC*, 2022 WL 3223176, at *7 (E.D. Tex. Aug. 9, 2022) ("The initial filing fee of $402 is ... taxable under § 1920); *Fernandes*, 2022 WL 3229510, at *4 (awarding the filing fee in an FLSA case).

The remainder consists of $200 for perfecting service through a private service company.[2]  Dkt. 11-2 at 20-22.  But "absent exceptional circumstances, the costs of a private process server are not recoverable under Section 1920."

---

[2] Of that $200 total, $50 is automatically excludable as fees for serving Abraham—not the Abacus Entities.  D'Costa is not entitled to default judgment against Abraham at this time.  *See infra* Part II.

*Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010) (citing *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997)). D'Costa has neither asserted nor shown any exceptional circumstances that would justify these fees. Accordingly, they are not recoverable. *See Alejandro*, 2022 WL 3223176, at *7 (denying private process server costs in FLSA case); *Fernandes*, 2022 WL 3229510, at *4 (same). D'Costa's award of costs against the Abacus Entities is limited to the $402 filing fee for this suit.

## II.  D'Costa has not shown that default judgment is appropriate against Abraham.

The result differs for Abraham, an individual who can—and did—appear *pro se* and filed a letter attempting to raise defenses to D'Costa's claims. Default judgment against Abraham is procedurally unwarranted at this time.

Default judgment is available only if a defendant "failed to plead or otherwise defend" the case. Fed. R. Civ. P. 55(a). But Abraham appeared at the initial conference to defend the case. And the letter he filed, Dkt. 12, constitutes another appearance on his own behalf (if not for his corporate Abacus Entities). *See Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 & n.5 (5th Cir. 1989) (an appearance includes "a variety of informal acts on defendant's part which are responsive to plaintiff's formal action in court, and which may be regarded as sufficient to give plaintiff a clear indication of defendant's intention to contest the claim") (internal quotations

19

omitted); *SEC v. Amerifirst Funding Inc.*, 2007 WL 4226921, at *2 (N.D. Tex. Nov. 29, 2007) (noting that "informal letters filed with the court" have been construed as "adequate Rule 8(b) answers").

To be sure, Abraham's letter is not styled as an answer. But the Court can treat a mistakenly designated pleading with the proper designation if justice requires. *Ocwen Loan Servicing, LLC v. Heiberg*, 2020 WL 957640, at *3 (E.D. Tex. Feb. 4, 2020) (citing, *inter alia*, *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 918 (5th Cir. 1996)); Fed. R. Civ. P. 8(f) (pleadings should be construed "to do substantial justice"). "Particularly with *pro se* filings, substance controls over form." *Ocwen Loan Servicing, LLC*, 2020 WL 957640, at *4 (citing *Amerifirst Funding, Inc.*, 2007 WL 4226921, at *2).

A responsive pleading must "admit or deny the allegations against it by an opposing party." Fed. R. Civ. P. 9(b)(1)(B). The pleading can generally all allegations, deny specific allegations, or generally deny all allegations except those specifically admitted. *See, e.g.*, *Flores v. Koster*, 2012 WL 6625278, at *1 (N.D. Tex. Dec. 20, 2012) (*pro se* defendant's responsive pleading included admissions, denials, and affirmative defenses), *report and recommendation adopted*, 2013 WL 145892 (N.D. Tex. Jan. 14, 2013).

Here, Abraham's letter specifically admits some of D'Costa's allegations while attempting to state defenses to others. *See* Dkt. 12. The letter concedes that D'Costa was not paid overtime but argues that Abraham simply continued

20

the same agreement D'Costa had with the previous business owner—paying $12 an hour for 12-hour shifts, with no overtime. *Id.* at 1. Abraham also asserts that he asked D'Costa for his identity and social security information to issue him a paycheck and comply with federal law, but D'Costa stalled and then quit in April 2021. *Id.* at 2. And Abraham claims that an officer from "work force" agreed with Abraham's position that D'Costa's overtime paycheck could not be processed without the requested documentation. *Id.*

Whatever the merits of Abraham's position, his letter at least attempts to negate D'Costa's allegation that any FLSA allegations were willful and to assert a good faith defense to D'Costa's claim for liquidated damages. Liberally construed, the letter qualifies as a specific denial that precludes entry of default judgment. This is doubly true because "the Court must be especially hesitant to enter a default judgment" against a *pro se* defendant. *Ocwen Loan Servicing, LLC*, 2020 WL 957640, at *3 (quoting *Interscope Records v. Benavides*, 241 F.R.D. 458, 461 (W.D. Tex. 2006)). The proper course is to deny without prejudice D'Costa's motion for default judgment against Abraham.

### Recommendation

It is **ORDERED** that Plaintiff Joye D'Costa's Motion to Supplement his Motion for Default Judgment (Dkt. 13) is **GRANTED.**

For the foregoing reasons, it is further **RECOMMENDED** that D'Costa's Motion for Default Judgment (Dkt. 11) be **GRANTED IN PART** and

**DENIED IN PART**.  Plaintiff should be **GRANTED** default judgment against Defendants Abacus FoodMart Inc. and Abacus FoodMart 1, Inc., awarding (a) overtime wages of $2,376.00; (b) liquidated damages of $2,376.00; (c) costs of $402.00 consisting of the initial filing fee; and (d) reasonable attorneys' fees, which Plaintiff is directed to update and revise to comport with this ruling and the lodestar method, and which the Court will resolve after entry of final judgment that resolves all claims against all parties.  Plaintiff's request for additional damages and costs against these Defendants should be **DENIED**.

It is further **RECOMMENDED** that Plaintiff's request for default judgment against Defendant Lukos Abraham be **DENIED** without prejudice.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on January 26, 2023, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge